# EXHIBIT 4

K85AAINRC                    Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE: TERRORIST ATTACK ON
SEPTEMBER 11, 2001,

                                        03 MD 1570 (SJN)

------------------------------x

                                        New York, N.Y.
                                        August 5, 2020
                                        3:00 p.m.

Before:

                    HON. SARAH J. NETBURN,

                                        Magistrate Judge

                        APPEARANCES

APPEARANCES GIVEN ON THE RECORD

1       (Case called)

2              THE COURT:  This is In Re: Terrorist Attacks on

3       September 11, 2001.  The docket number is 03 MD 1570.

4              I am going to call out in order to facilitate this

5       process counsel's names to make sure we have everybody need on

6       this call.  I understand that on behalf the plaintiff executive

7       committee that Mr. Andrew Maloney will be speaking; is that

8       correct?

9              MR. MALONEY:  That's correct, your Honor.

10             Thank you.  I am here.

11             THE COURT:  Good afternoon.

12             And I have been advised as well that Jerry Goldman may

13      also speak on behalf of the plaintiff.  Is that correct?

14             MR. GOLDMAN:  That is correct, your Honor.

15             Good afternoon.

16             THE COURT:  Good afternoon.

17             And in addition we have Robert Haefele, from Motley

18      Rice; is that correct.

19             MR. HAEFELE:  Yes, your Honor.  Thank you.

20             THE COURT:  Thank you.

21             And Sean Carter from Cozen O'Connor; is that correct

22             MR. CARTER:  Yes, your Honor.  Good afternoon.

23             THE COURT:  Good afternoon.

24             Anybody else from plaintiff's side that anticipates

25      speaking?  I know we have other lawyers on line but anyone else

1  who is speaking?

2          UNIDENTIFIED MALE:  Judge, I'm probably not speaking.

3  Sorry for the delay.

4          MS. FLOWERS:  Your Honor, this is Joan E. flowers.

5  Good afternoon.  I may also speak but only if necessary.

6          THE COURT:  Great.  Thank you very much.

7          MR. FLEMMING:  Your Honor, this is Timothy Flemming

8  from Wiggins & Childs, and I would speak on behalf of the Maher

9  group of proposed plaintiffs.  We filed papers just this week

10  should your Honor want to reach the any discussion about these

11  papers.

12          THE COURT:  Thank you.

13          And obviously any other lawyer who hasn't made an

14  appearance who ends up speaking can obviously state your

15  appearance at that time.  Anybody else from the plaintiff's

16  side who anticipates speaking at this conference?

17          OK.  On behalf of the Republic of Sudan, who going to

18  be the primary speaker?

19          MS. ERB:  Hi, your Honor.  This is Nicole Erb, from

20  White & Case.  I am joined by my colleagues Nicolle Kownacki

21  and Matthew Leddicotte and they will be the primary speakers

22  today.

23          THE COURT:  OK.  Thank you.

24          I hope everybody on this call is healthy and safe.  In

25  light of the COVID-19 pandemic we're conducting this proceeding

K85AAINRC                    Conference

1    remotely by telephone conference.  I, myself am outside of the

2    district.  The conference is being recorded both by electronic

3    recording and by the court reporter, Ms. Moore, who is here.

4    Anyone else is strictly prohibited from recording or

5    rebroadcasting any portion of today's proceeding.  I'll remind

6    everybody that this is a court proceeding.  It is open to the

7    public around to the press and the parties should conduct

8    themselves just as they would if we were in the courthouse.

9            Lastly, I will request that before anybody, when

10   anybody begins to speak, if you can state your name again

11   clearly so that the court reporter can properly attribute your

12   statements to you.  That will facilitate the transcript.

13           So, we are here in connection with a series of

14   letters.  They were filed to Judge Daniels in late June and

15   he's referred the matter to me as to how to proceed in the

16   various cases that have been filed and are pending against the

17   Republic of Sudan.  It's my understanding that with respect to

18   the claims filed by the O'Neil plaintiffs that those claims,

19   that there's not been a default entered, that they have amended

20   the complaint and the defendants have appeared and filed a

21   motion to dismiss.

22           In addition, there are some other cases.  The federal

23   case, Burnett case, where a default has been entered and it is

24   my understanding that the parties are requesting an opportunity

25   to amend those pleadings and consolidate in order to jointly

K85AAINRC                    Conference

1    defend any anticipated motions to dismiss.

2            I also understand that the Ashton plaintiff who also

3    have a default judgment or a default I should say, are

4    requesting both the opportunity to amend and proceed to a

5    damages hearing on their default.

6            And lastly, there are some outstanding issues raised

7    by the Maher complaint.  I believe that's M-A-H-E-R, I believe,

8    that Mr. Flemming handled.  I think there are a few cases that

9    fall in that category represented by attorney Flemming that I

10   want to get to.  I think that that is the landscape for us

11   today.

12           Maybe I'll begin by asking the party who's going to be

13   speaking on behalf of the O'Neil plaintiff how you recommend

14   the Court proceed?

15           MR. GOLDMAN:  Thank you, your Honor.  This is Jerry

16   Goldman.

17           This case has been handled on a consolidated basis on

18   consolidation order back in late in 2003 and the establishment

19   of the MDL and structure of 2004.  And I would defer to the

20   substantive comments as how we've all pled to (inaudible) and

21   operate in a consolidated and coordinated basis for purpose of

22   judicial economy to Mr. Maloney.  If the Court wants more in

23   depth from me, I am prepared to do it but Mr. Maloney would

24   best and Mr. Carter would best be prepared to describe how we

25   envision new cases to move forward in the interest of justice

K85AAINRC                    Conference

1    and interests of our client after waiting 16 years.

2            THE COURT:  Thank you.

3            All right.  Mr. Maloney or Mr. Carter?

4            MR. MALONEY:  Yes, your Honor, Mr. Maloney here.  One

5    correction.  And maybe Mr. Goldman can comment on this but I

6    think your Honor described some of the procedural history and I

7    believe the O'Neil case that was filed back in, I think, 2003

8    served Sudan and Sudan has been defaulted in that case but I

9    don't think they ever got a certificate of default from the

10   clerk.  That's the only difference between the original O'Neil

11   complaint and the other I think four or five complaints where

12   we did get certificates of default.

13           The 2018 complaint filed by O'Neil I believe is not an

14   amended complaint.  It's a standalone new complaint and I

15   believe that was done to alleged class certification issues and

16   redacted that because Jackson had only been passed in late

17   2016.  And I think Mr. Goldman filed a standalone complaint

18   asserting class allegations so everybody would get the benefit

19   of Jackson or at least will the (inaudible) injury cases.

20           THE COURT:  OK.  It's certainly the Court's review --

21   just so the record is clear, I've reviewed the docket.  I don't

22   see a default entered on the O'Neil original case.

23           One other housekeeping matter, if I can ask everybody

24   who is not speaking to please mute your line because there's a

25   lot of outside noise.  The only line that should be open right

K85AAINRC                    Conference

1    now is mine and Mr. Maloney who is speaking.  Everybody else

2    should mute their phones.  Can everybody one take minute to

3    make sure they've muted their phones.  I still hear somebody in

4    the background.  Can you please mute your line.  Please mute

5    your phone.

6            (Pause)

7            THE COURT:  All right.  OK.  I don't know if that's a

8    client maybe who is listening in.  If the lawyers can please

9    remind their client, anybody listening has to be on a

10   listen-in-only.  It is not fair to anybody but mostly the court

11   reporter.

12           OK.  Mr. Maloney, we were just discussing that the

13   2018 case is actually not an amended complaint but a new

14   complaint and if it is my understanding that was with respect

15   to the prior O'Neil case that no default certificate was

16   obtained.

17           MR. MALONEY:  Correct.

18           MR. GOLDMAN:  Your Honor, this is Jerry Goldman.

19           The first complaint was duly served by state on a

20   clerk certificate on March 18, 2005.  It was filed originally

21   on March 30, 2004.  It too had class allegations and we're

22   preserving that because the common law allegations, as well as

23   the other causes of action.  The 2018 case was as Mr. Maloney

24   said duly filed, duly served and was a standalone complaint.

25           With regard to the clerk's certificate, it's our

K85AAINRC                    Conference

1    position and the case law is clear that a clerk certificate is

2    merely a ministerial act reflecting the circumstances,

3    reflecting the fact that within the (inaudible) required under

4    the Federal Rules there was neither an answer, appearance or

5    other motion or other type of judicial intervention sought by

6    the defendants.  Obviously, 60 days past some time in 2005 and

7    we're now 2020, 15 years later.

8           This Court has and the case law is clear, the inherent

9    jurisdiction to so issue a certificate if it is necessary.  The

10   reason we deferred with the certificate was because of the

11   class allegations and I did not want to muddy the water.

12   Although, the law is clear I had until I moved before your

13   Honor for the default proceeding.  So, (inaudible) damages and

14   the SIA to move for class certification which, obviously, we

15   would do just like we did in the (inaudible) case.

16           THE COURT:  OK.  Thank you.

17           Let me turn back to Mr. Maloney who I think was going

18   to tell me I think on behalf of the plaintiff executive

19   committee what their recommended course of action is.

20           MR. MALONEY:  Well, as an initial matter, obviously,

21   during the intervening years we continued to collect evidence

22   against Sudan and there have been some very significant legal

23   findings against the Sudan in the 1998 Embassy bombing case and

24   the USS coal bombing case.  And we would like to include the

25   updated information, as well as the changes in the law in an

1    amended complaint.  We don't believe that amending the

2    complaint to include the sub-changes to core allegations and

3    therefore which we believe should not vacate the original

4    certificate of default.  That still remains.  And the Sudan

5    would have to file an appearance and move to vacate those, the

6    defaults that are currently obtained by four of the complaints

7    and potentially the fifth complaint being the original O'Neil

8    complaint.

9              You may recall, your Honor, that we did this in the

10   case against Iran for which there was a default.  We asked the

11   Court to allow the complaints against Iran to be amended to

12   include the change in the Foreign Sovereign Immunity's Act.

13   1605A7 is now 1605A, which makes clear that the parties have a

14   private right of action against the state itself and not just

15   state officials.  That's a significant change in the law.

16   Jackson was a significant one.  And there are some new facts

17   and legal findings that we wanted to include in the amended

18   complaint and we believe the core allegations against the Sudan

19   are still the same.  The allegations being that they comply

20   with the Al-Qaeda for many years, supporting Al-Qaeda and

21   supporting multiple attacks against the United States Americans

22   including 9/11.

23             THE COURT:  OK.  And just so I understand your

24   argument, your view is because the Court previously allowed an

25   amendment for the claims against Iran to reflect the change in

K85AAINRC                    Conference

1    the law without requiring service again that the default

2    against the Republic of Sudan should remain in place even if

3    there is an amendment; is that your position?

4              MR. MALONEY:  Yes, your Honor.

5              THE COURT:  OK.

6              MR. MALONEY:  And I think there is the majority of

7    authority supports that proposition.

8              THE COURT:  Do you cite to any cases in your letter

9    brief?

10             MR. MALONEY:  I don't believe we did but I know I've

11   done a lot of reading on some of the case cases where Sudan

12   itself had been involved in the (inaudible) case out of

13   District of Virginia, the plaintiffs there amended their

14   complaint twice after the original default was entered and

15   before default judgment hearing was held.  In that case they

16   later tried to amend a fifth time after the case had gone up

17   and down on appeal on some collateral issues related to what

18   the state or federal cause of action for damages could be used.

19             But in that case there are some significant rulings

20   with respect to the Sudan.  And I know in that case they

21   amended the complaint after the original defaults and it didn't

22   change the original.  The court in that case actually allowed

23   the Sudan to come in four years later and the Sudan made a

24   motion to dismiss on jurisdictional grounds.  That motion was

25   denied and the Sudan then informed Court that they were no

1    longer going to participate in an American courtroom.  They

2    felt that the United States didn't have jurisdiction over them

3    and they left.  So, a second certificate of default was entered

4    by the clerk against the Sudan and a fourth amended complaint

5    was filed shortly after that and a default hearing, default

6    trial was held and the courts found that Sudan was in fact

7    liable for the U.S. (inaudible) bombings.

8            THE COURT:  How do you suggest that the Court

9    reconcile how we proceeded against Iran which has continued to

10   remain in default and has never appeared in this case with the

11   facts here where we have counsel appearing now -- at least in

12   the O'Neil case -- on behalf of the defendants, and the firm

13   case law that rejects the notion that a sovereign state should

14   be found liable in a default posture?

15           MR. MALONEY:  Well, your Honor, because there were

16   several cases including one that went --

17           THE COURT:  Is this Mr. Maloney?

18           MR. MALONEY:  Yes.

19           That went to the Supreme Court where Sudan tried to

20   vacate the default for its support of Al-Qaeda in both those

21   terror attacks and the Court denied it.  The Court used

22   actually the lower standard which is the Rule 55C standard to

23   set aside defaults where the sovereign would have to show good

24   cause that there was a mistake inadvertent apprize or unusual

25   neglect.  Conversely, the default was not willful that there

1   was a meritorious defense that would not prejudice plaintiffs.

2   Under that standard the Rule 55 standard which is a certificate

3   of default as opposed to default and judgment, the Court denied

4   Sudan's motion to vacate the defaults.  And not just one case

5   but there are several cases in both those tera-text.  They ran

6   on separate tracks and they found a default by Sudan was

7   willful and essentially gamesmanship on the part of Susan.

8           So, I don't think -- I think the burden is on Sudan to

9   try to vacate the defaults here.  I think we would oppose that

10  and I think the Court would have to take notes of its conduct

11  and look at those other cases for very, very similar -- In

12  fact, our case is worst because the delay has been much longer

13  than those other cases and in those cases I could cite and put

14  them in a letter brief to your Honor that the motion to vacate

15  for Sudan was denied.

16          MR. CARTER:  Your Honor, this is Sean Carter.  Could I

17  just tag onto Mr. Maloney's comment a bit and offer, perhaps, a

18  sort of roadmap for dealing with the procedural issues?

19          THE COURT:  Sure.

20          MR. CARTER:  The first your Honor asked whether

21  there's case law addressing the question about whether the

22  amendments would need to be served and whether the filing of

23  amendments would vacate the defaults and a lot of this turns on

24  whether or not the amendments would result in the presentation

25  of a new claim within the meaning of the Federal Rules.  And

K85AAINRC                 Conference

1    the courts have been pretty clear in the context of terrorism

2    litigation quite similar to this that the filing of an

3    amendment that simply defines the sources of law for the, and

4    causes of action and updates facts does not result in the

5    presentation of a new claim so long as the essential gist of

6    the action is the same.  And that was Judge Lambert issued a

7    decision in the In Re: Islamic Republic of Iran Terrorism

8    Litigation.  There was a decision Gates v. Syrian Arab

9    Republic, which is a D.C. Circuit decision in 2011 and certain

10   underwriters at Lloyd's reported at 811 F. Supp. 2d 53 which is

11   the D.C. District Court decision from 2011.

12          We think we're squarely within the four corners of all

13   of that authority insofar as we're not changing at all the gist

14   of this action.  It's still a tort claim still seeking the same

15   category of damage resulting from the same injuries from the

16   same terrorist attack.  The gravamen of the complaint remains

17   the same that Sudan is responsible by virtue of its intimate

18   collaboration with Al-Qaeda over a number of years.  And so

19   within the framework of those cases, we think it's very clear

20   that we are entitled to file the amendment.  We're not

21   obligated to serve and it doesn't result in the opening of the

22   default.

23          Procedurally, what we have right now, your Honor, is

24   that Sudan as your Honor has observed has not entered an

25   appearance in Burnette, Ashton, Federal or the Continental

K85AAINRC                    Conference

1  case.  It's simply not before the Court at all.  It's somewhat

2  conspicuous because there was an appearance entered in O'Neil.

3  And because that happened, we went out of our way back in

4  February to reach out to counsel for Sudan, provide them with

5  copies of the service papers from the other action, provide

6  them with copies of the certificate of default and to try and

7  see whether there was common ground.

8          There has not been, Sudan still has not entered an

9  appearance in the other cases.  As recently as this week a pro

10  hac vice motion was filed which was specifically and expressly

11  limited to O'Neil.  So, our perspective on this is that what

12  the Court has right now is an unopposed motion to file

13  amendments in Burnette, Ashton, Federal and Continental

14  relative to a defendant that has not yet appeared.  And one

15  sets file that defendant will have an option, it can either

16  choose to appear in those actions and defend the claims against

17  it and try to assert a posture similar to the one in O'Neil or

18  it will decide it doesn't want to do that.  If it does appear,

19  it will need to seek relief from a default in those cases, make

20  a showing in accordance with the rule as Mr. Maloney said.  If

21  it chooses to go down that road and chooses to try and

22  harmonize it in the Court, it's up to the discretion of the

23  Court to decide how to proceed

24          but going through this process will ferret out what

25  Sudan intends to do in the litigate with Arch and whether or

1   not we can harmonize the proceedings among the various cases.

2   That seems the most straight forward approach.

3           THE COURT:  Mr. Carter, so I'm understanding your

4   mission is here, setting aside O'Neil, your recommendation to

5   the Court would be to allow, essentially, grant the unopposed

6   motion to amend the complaint.  I guess, then the question is,

7   are you seeking the Court's blessing on not reserving under

8   1608, reserving the complaint?  And then if the Sudan wants to

9   come and either make claims about service or make claims about

10  damages or whatever it wants to do, it can do at that time.  Is

11  that essentially your position?

12          MR. CARTER:  Yes, your Honor.  And I think we would

13  ask for a ruling at this time that we're not required to serve.

14  Again, I think we would then want in addition to that, your

15  Honor, for the Court to set a deadline that failing an

16  appearance by Sudan in these cases, the Court would proceed to

17  set a date for an evidentiary hearing as to Sudan's liability

18  for purposes of a default judgment.  And so under the FSIA

19  Sudan does receive some protections that are a bit unusual and

20  not granted to other defendants, even in a default context and

21  that would involve a requirement that plaintiffs come forward

22  and present evidence satisfactory to the Court in order to

23  sustained a default judgment.

24          So, once the amendment is in place, if a deadline is

25  simply set that Sudan can either choose to appear or we're

1    going to proceed onto the default judgment I'm hearing, that I

2    think, will crystalize what's going to happen here.

3            If Sudan elects not to appear you know we have been

4    going through a lengthy process over the years gathering

5    evidence through FOIA requests to the State Department that

6    were outstanding for thirteen years, FOIA requests to the CIA

7    that were outstanding for six years, a subpoena to the state

8    department and CIA was issued 2018 as a result of all those

9    efforts, as well as the discovery that we've done as to other

10   defendants relating to al-Qaeda Sudanese operations. We are in

11   a position now to present a robust body of evident in that

12   default hearing and we are essentially ready to go subject to

13   the availability of our experts.

14           THE COURT: OK. Can I ask on the question of service

15   which I've done, we've researched in preparation for today's

16   conference, I think there is, it is an open question about

17   whether or not in the posture that your cases are in, whether

18   or not service needs to be affected pursuant to 1608. I guess

19   I am wondering whether there is any case law to support the

20   proposition that I should issue an order in advance allowing

21   you or blessing you from not doing that. Wouldn't the more

22   ordinary course is lawyers give the best advice they can give

23   to their clients to see whether or not it's necessary to serve

24   or not? And then if and when the issue is litigated, the Court

25   will resolve the question? It feels a little like an advisory

1  opinion for me to say in advance what you should be doing as

2  far as service.

3            MR. CARTER:  Your Honor, I do think that plaintiffs

4  have made similar requests in some of the cases that I've cited

5  to your Honor and that the courts have issued orders.

6  Candidly, I think that this may be an issue that just sort of

7  falls by the roadside because in the event that Sudan elects to

8  have counsel appear, you know, normally under Rule 5B once

9  there's counsel appearing of record in the proceeding, papers

10  are served on counsel and that sort of ends the process.  And,

11  perhaps, it's one of the reasons Sudan has elected not to

12  appear thus far in other of the cases.  But if we go through

13  the amendment process and there's a deadline set failing, which

14  there'd be a default judgment hearing, I think we'd have an

15  appearance perhaps these things just resolve themselves.

16            MR. HAEFELE:  Your Honor, this is Robert Haefele.

17            I think Mr. Carter may have given you some of the

18  citations about some of the cases I think your Honor might want

19  look at for this issue are the In Re: Islamic Republic of Iran

20  case and particularly, pages -- well, I know 106 but it might

21  start a little earlier 104 and 105.  And there's another case

22  called Bellkin v. Islamic Republic of Iran.  I'm sorry, your

23  Honor.  I only have the Lexus cite which is 220 U.S. District

24  Lexus 130286 and I think it's at page seven, are two of cases

25  that I know.  There's probably others I think that are

K85AAINRC                    Conference

1    referenced in those.

2             THE COURT:  OK.  Thank you.

3             And just to clarify one other point, it sounds to me

4    what I'm hearing from, at least from the lawyers that have

5    spoken this far is that I should treat the O'Neil case and the

6    federal case and the Burnette case and possibly others but

7    we'll stop with that, in the same posture.  Meaning, I should

8    authorize all of them to file an amended complaint and proceed

9    to the default posture.

10            Is that correct?

11            MR. CARTER:  Yes, we're asking that the Court

12   authorize us to file the amendment and then again set a

13   timeline failing an appearance at which a default hearing would

14   being settled.

15            THE COURT:  OK.  All right.  Thank you.

16            Before I turn to the plaintiff, let me just turn for a

17   moment to the Ashton case.  I think it's possible that there's

18   a separate different request that's being made or maybe it's

19   the same sort of request.

20            Who is speaking on behalf of the Ashton plaintiffs?

21            MR. MALONEY:  Andrew Maloney, your Honor.  Thanks.

22            The reason we made a separate request and filed a

23   separate letter is because after drafting our complaint,

24   amended complaint against the Sudan we tried to harmonize with

25   the, their both lengthy complaints but we felt the need again

K85AAINRC                    Conference

1    to file our own amended version of the CAC which you may

2    recall, we did against the Kingdom of Saudi Arabia.  And I

3    think it shouldn't, I don't think it should be a problem for

4    the defendant or the Court in terms of proceeding in a

5    consolidated fashion just like we've done in all the other

6    cases, in most particular against the kingdom.

7            There are a lot of smart people, a lot of smart

8    lawyers on the BEC but we don't always agree on everything and

9    we want to be able to file our own Ashton complaints.  I know

10   that Mr. Flemming is on the line for the Maher group and I

11   believe that his clients used to be original Ashton plaintiffs.

12   So, they have the benefit of the default.  And I think his

13   motion a few days ago was to adopt a short form of the Ashton

14   complaint.  I assume if we file an amended complaint we'd want

15   to redo the same for that.  So, we believe that two complaints

16   in this case would still be fairly easy for the Court, for the

17   parties, plaintiffs and the defendant, to be able to do what

18   needs to be done moving forward.

19           THE COURT:  I hate to say this but I had a little

20   technical difficulty right when you started talking about Mr.

21   Flemming's cases.

22           MR. MALONEY:  I can start again, your Honor.

23   Mr. Flemming has some clients that is used to be plaintiffs in

24   the Ashton action for the, retained him and his firm and he

25   recently filed a motion to adopt the Ashton complaint in a

1   short form.  He wants to file a new complaint in the short form

2   essentially adopting the original Ashton complaint against

3   them.  Those particular plaintiffs had the benefit of the

4   default that we got for them many years ago.  And I assume that

5   moving forward Ashton filed an amended complaint against the

6   Sudan, next the Maher group would want to do the same thing and

7   adopt the Ashton amended complaint as well.

8           THE COURT:  OK.  Let me just go back one more to the

9   question I have before I turn to defendants.  With respect to

10  the 2018 new complaint that was filed against Sudan, there's

11  been no default and to the contrary (inaudible) has appeared in

12  a timely fashion.  So that case is going to move forward

13  regardless.  How does that affect the other cases we have been

14  talking about?

15          MR. CARTER:  Your Honor, I should have addressed this

16  previously.  The 2018 complaint is sort of a quintessential

17  late file tagalong.  It's not a product of the plaintiff's

18  executive committee efforts, sort of no different than any

19  other tagalong pleading filed in MDL.  The case management

20  orders is the overall arching purpose of the MDL dictate that

21  the principle proceeding that the common claims will be

22  conducted pursuant to the plaintiff's executive committee's

23  filings in the lead action and the process shouldn't be driven

24  by a later filed tagalong case.

25          So, what we're proposing here is that the 2018

K85AAINRC                    Conference

1    complaint would go along with the other cases that are

2    proposing to file the consolidated pleading updating the

3    sources of law.  So, there would be then functionally amended

4    pleading in that case as well.  And again, Sudan would have the

5    same sort of decision to make at that point.  Doesn't want to

6    continue to appear in that case in the face of consolidated

7    pleading and doesn't want to defend that case and doesn't

8    similarly want to then seek relief from the defaults in order

9    to proceed in the other cases.

10         You know, until we know whether or not there's going

11   to be a different posture on Sudan's part with regard to those,

12   it doesn't seem necessary to address the issue.  But if Sudan

13   seeks relief from the default, we'll have litigation over that

14   issue.  And if there are cases that end up in different

15   procedural postures, that's just a reflection of the fact that

16   there is one action filed something on the order of 13/14 years

17   after the others.

18         MR. GOLDMAN:  Your Honor, this is Jerry Goldman.  I

19   completely agree with what Mr. Carter said.

20         THE COURT:  Thank you.

21         So, I am not quite sure that the law would say to

22   Sudan, you've got all of these opportunities for 15 years to

23   show up at that party.  You never showed up.  Now a late filed

24   complaint comes in and you decide to show up.  You've waived

25   your right to oppose and defend against that late filed

1    complaint.  I don't think that the law would permit for that.

2    So, I'm not sure what is to be authorized.

3            MR. MALONEY:  Your Honor, I'm not taking issue what

4    that in any way but it seems to me that it is a tale on the

5    larger beast here and perhaps, that complaint and their motion

6    can be stayed until we find out how we're proceeding in the

7    vast majority of the rest of the MDL with the other defaulted

8    cases against the Sudan.

9            THE COURT:  All right.  Well, why don't we turn now to

10   hear from Sudan, what they intend to do or what they're seeking

11   to do.

12           MR. LEDDICOTTE:  This is Matthew Leddicotte.

13           I think I might offer some clarifying comments.  And

14   also I am prepared to speak on the issue of what service of an

15   amended complaint does with respect to the entries of default

16   that exist with certificate of default in three cases.  My

17   colleague, Nicolle Kownacki will be able to address issues of

18   whether or not that the plaintiffs that are seeking file a

19   consolidated amended complaint or perhaps more than one amended

20   complaint should be permitted to do so.  But if I can reset I

21   think a couple of issue first, I think that could be helpful to

22   the Court.

23           THE COURT:  OK.

24           MR. CARTER:  Your Honor, this is Sean Carter.  I

25   apologize for interjecting in this way but we think it

 1    important just to note on the record that there's simply not an

 2    appearance in many of these cases by Sudan and there seems to

 3    be some tactical reason for that and yet counsel is directing

 4    arguments to cases in which Sudan hasn't appeared.  And so I do

 5    need to note before this begins that we do object to that.  I

 6    just wanted to make clear that position.

 7              THE COURT:  Thank you.

 8              MR. FLOWERS:  I was going to make the same objection.

 9    Thank you.

10              THE COURT:  Thank you.  And that fact is not lost on

11    the Court, sir.

12              MR. LEDDICOTTE:  Matthew Leddicotte.

13              May I proceed?

14              THE COURT:  Yes.

15              MR. LEDDICOTTE:  Let me as an initial matter just say

16    now that we will appear on the record in all of the cases here.

17    As you our letter to the Court and our prior letters to the

18    plaintiffs counsel leading up to this conference as stated,

19    Sudan is prepared to litigate this action.  That is with we are

20    working and have been working with plaintiff's counsel over the

21    last several months to figure out a coordinated and

22    consolidated way to --

23              THE COURT:  So, on that point, Mr. Leddicotte, if I

24    order you to file appearances in the next ten days in all the

25    cases, will you comply with that order?

K85AAINRC                    Conference

1          MR. LEDDICOTTE:  Yes.

2          THE COURT:  All right.  Proceed.

3          MR. LEDDICOTTE:  And your Honor, we filed notices of

4     appearance in the main MDL docket and the O'Neil sub-docket

5     when we responded to the O'Neil, the two O'Neil cases in our

6     motion to dismiss filed earlier this year.  I think on the

7     issue of the O'Neil cases I think it is important note, I think

8     it's been described by counsel as a late filed tagalong and or

9     a standalone action.  The 2018 O'Neil complaint itself purports

10    by its own words to be, quote, a supplement but not supplant or

11    supersede, unquote, it's 2005 amended complaint, quote, solely

12    in order to add new causes of action.  So, I think when you're

13    supplementing the complaint the allegations are fundamentally

14    identical.  The identities of the parties are the same and you

15    can describe your 2018 complaint as solely in order to add new

16    causes of action, i.e. new claims.  That does not strike me as

17    a tagalong action or a standalone action.  It is inherently

18    linked to the original action filed in 2005.  Excuse me.  I

19    think the amended complaint in the action was filed in 2005.  I

20    believe the original complaint in that earlier action was in

21    2006.

22         As we a stated in our motion to dismiss, we think that

23    that 2018 filing actually is an unauthorized amendment of the

24    complaint because the complaint filed by O'Neil in 2004 had

25    already been amended once in 2005.  So, the second amendment to

K85AAINRC                    Conference

1    add new claims is an unauthorized amendment.

2                    I think also stepping back for a moment about

3    plaintiff's counsel issues with what Sudan has done, I think

4    it's important to recall for the Court and we have that in our

5    letters to the Court, once Sudan was served with the O'Neil

6    2018 complaint, it responded and filed a motion to dismiss

7    within the time allotted.  Immediately thereafter, plaintiff's

8    executive reached out to counsel for Sudan and we began with

9    them a process of engaging in meet and confer to try and deal

10   with a coordinated consolidated way of moving these cases

11   forward.  It is not that the passage of time since January or

12   February has been without attempting to work with plaintiff's

13   counsel to try and go forward and to work with the way that

14   will go forward in these cases with Sudan's intent to litigate

15   the cases that are before it now.

16                    I would also like to clarify, I think your Honor said

17   more clearly but I think there's been commentary on it but I

18   think it's important to clarify in terms of whether where there

19   have been and have not been entries of default and a couple of

20   unique issues with the certificates of default, the entries of

21   default that do exist.

22                    Plaintiff's counsel has talked about five cases,

23   Ashton, Burnette, Federal Insurance, Continental Casualty and

24   O'Neil.  There are only entries of default, certificates of

25   default in Ashton, Burnette and Federal Insurance.  There are

K85AAINRC                    Conference

1    no entries of default and no certificates of default against

2    Sudan and Continental Casualty and in O'Neil.

3              If I'm understanding the plaintiff's counsel correctly

4    that the Burnette and Federal Insurance cases now want to

5    attempt to maintain their defaults, that is actually a change

6    in position from the letter that they've submitted to the Court

7    on June 18 and the discussion of the position is that the

8    parties have had through the course of our meet and confer.  It

9    is only the Ashton plaintiffs, at least in the letters filed

10   with that Court who are seeking to maintain the entry of

11   default after they've failed an filed amended complaint.  And

12   in fact they've raised that --

13             THE COURT:  Can I just remind anybody who's joining

14   the call to mute their line.

15             MR. LEDDICOTTE:  And as I was saying, from the letters

16   submitted to the Court and the positions as we understand it,

17   it's totally the Ashton case that is seeking to maintain its

18   default.  And Ashton expressed that for the first time in their

19   letter to the Court.  The letters to the Court, both the

20   plaintiffs and Sudan's, contain the back and forth the parties

21   went through to get to this point.  And up until the June 18

22   letters to the Court, certainly, how the plaintiffs have

23   represented their positions to us was that they wanted to go

24   forward with amended complaint with the relief from entries of

25   default in the three cases in which they have them.

1          I think it's important also to go into some detail

2    about the entry of default in the Ashton case.  It does not

3    apply to approximately half of the Ashton plaintiffs.  The

4    Ashton, there was a consolidated master complaint filed in

5    Ashton on March 6, 2003 -- that is in the Ashton docket at ECF

6    11 -- and had approximately roughly 1300 plaintiffs.  The

7    affidavit of service which is in the Ashton docket at number

8    358, indicates that that master complaint was served on Sudan

9    in April of 2003.  Past that time there have actually been six

10   amendments to the consolidated master complaint in Ashton.

11   Those amendments have the same allegations fundamentally

12   regarding Sudan and the same legal claims are asserted but the

13   key difference is that those amended complaints add

14   approximately another 1300 plaintiffs to the Ashton action.

15   But the Ashton certificate of, clerk certificate of default

16   which was entered on December 22, 2011 is based expressly on

17   March 2003 consolidated master complaint, not any of the six

18   amended complaints.  So, I think it's also important to realize

19   that whatever certificate of default that some of the Ashton

20   plaintiffs have is not as to all of the Ashton plaintiffs.

21          (Loud music playing; Parties have disconnected and

22   rejoined the conference)

23          THE COURT:  I am going to do a quick roll call and see

24   if you are here.

25          Andrew Maloney?

K85AAINRC                    Conference

1          MR. MALONEY:  Here, your Honor.

2          THE COURT:  James Tyler?

3          MR. MALONEY:  Don't worry about him he is my partner.

4          THE COURT:  All right.  Mr. Goldman.

5          MR. GOLDMAN:  I am here, your Honor.

6          THE COURT:  Mr. Haefele?

7          MR. HAEFELE:  Here, your Honor.

8          THE COURT:  Ms. Flowers?

9          MS. FLOWERS:  Here, your Honor.

10          THE COURT:  Mr. Carter.

11          MR. CARTER:  Yes, your Honor, I am here.

12          THE COURT:  Mr. Flemming.

13          MR. FLEMMING:  Yes, your Honor.  I am here.

14          THE COURT:  Do we have Mr. Leddicotte?

15          MR. LEDDICOTTE:  Yes, your Honor.

16          THE COURT:  Ms. Kownacki.

17          MS. KOWNACKI:  Yes, your Honor.

18          THE COURT:  Ms. Erb.

19          MS. ERB:  Yes, your Honor.

20          THE COURT:  OK.  I think we all are on again.  Thank

21  you.

22          Let me remind everybody to mute your line if you are

23  not speaking and Mr. Leddicotte was speaking.  So, the only

24  people whose line should be open right now are me and

25  Mr. Leddicotte.  I think going forward for 9/11 case we're

K85AAINRC                    Conference

1    going to use another system so we can put a line in for people

2    to "listen only" and we can avoid the problems that we just

3    experienced.

4            OK.  Mr. Leddicotte, I believe you were talking about

5    the Ashton case and your view that the default only is related

6    to those initial, approximately, 1300 plaintiffs in the

7    original complaint and would not include those complaints,

8    those amended complaints filed thereafter which added another

9    possibly 1300 plaintiffs.

10           MR. LEDDICOTTE:  Thank you, your Honor.

11           Yes, that's correct.  I think it sounds that at least

12   you and I were interrupted by the music at the same time.  So,

13   what I was concluded on is that the certificate of default that

14   the clerk issued with respect to the Ashton case expressly

15   references the consolidated master complaint from March of

16   2003, not any of the other six amended complaints.  In the

17   docket there do not appear to be any affidavits of service on

18   Sudan regarding those six amended consolidated master

19   complaints.  So, that means that those 1300 approximately

20   plaintiffs added by the first through six amended consolidated

21   master complaint have not served Sudan.

22           Why is this important?  The case law that your Honor

23   has already referenced but that also exists from Rule 5A2

24   require that amended complaints be served on a non appearing

25   defendant whether or not there has been a certificate of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    default, just simply that the time to appear has lapsed or has

2    expired if there are new claims, and the case law indicates

3    quite clear that will new plaintiffs are considered new claims

4    for the purpose of 5A2.  So, if those cases haven't been

5    served, they are still in a lack of service posture.

6           That's where the Ashton case has been.  I want to deal

7    with the Federal Insurance entry of default just to clarify a

8    few points and then I think move to what happened with the

9    proposal for an amended complaint with respect to defaults, as

10   well as allow my colleague Ms. Kownacki to speak to whether or

11   not there should be a consolidated amended complaint.

12          On the Federal Insurance entry of default it does not

13   appear in either the Federal Insurance or MDL 1570 dockets.

14   Mr. Carter I think referenced and it is correct, he provided us

15   with what appears to be a signed clerk certificate of default

16   that is dated September 9, 2005.  But that signed certificate

17   we cannot find it on either the Federal Insurance sub-docket or

18   the MDL 1570 master docket.  It's a bit confusing as to what is

19   going on there.  We certainly do see that on September 13,

20   2005, an affidavit in support of the request for the clerk's

21   certificate of default against Sudan and other parties was

22   filed that included an unsigned proposed certificate.  That

23   affidavit was dated a few days earlier on 9/8/2005.  But again,

24   the signed certificate by the clerk is not in the docket.

25          If the Federal Insurance case is not trying to

1    maintain its entry of default, if they're permitted to amend

2    their complaint, I don't think that's an issue.  If it is, I

3    think it potentially is because in the context of entries of

4    default in that proceeding technicalities like this do matter

5    and are looked at that way.

6            I am going to take your issue out of order but we

7    seemed to focus quite a bit on the issue of defaults.  And I

8    think it's important to actually address maybe that second

9    issue your order first.  What does service of a consolidated

10   amended complaint do to entries of default that exist again,

11   here, in three cases but not in all five cases?  We've

12   addressed this in our letter and cited in particular to Vesco

13   and some other cases from the Second Circuit and the

14   applications of those from the Southern District and the

15   Eastern District of New York.  I would note that the case law

16   that plaintiff's counsel has addressed to you, they've not put

17   in letters to the Court in either their opening letters or in

18   the one reply letter that was filed as to us.

19           If your Honor is inclined to go there, we would

20   request supplemental briefing on that so that we may look at

21   what those cases actually say and stand for and potentially

22   meaningful differences with the posture of the case such as

23   whether or not the sovereign defendants in those cases had ever

24   appeared in any way which would contrast to Sudan here which is

25   appearing, now is participating in this conference, has filed a

1   motion to dismiss in O'Neil and has signaled to the Court and

2   to the plaintiffs, our intention to litigate this matter fully.

3          If your Honor were to authorize a consolidated amended

4   complaint, either one or more than one, that does mute any

5   prior entries of default.  In Vesco, the Second Circuit is

6   quite clear that an amended complaint supersedes the original

7   and renders it of no legal affect.  The only question about

8   that is when does that amended complaint supersede the original

9   complaint?  There's one of two times.  Either at the time the

10  amended complaint is filed if it contains no new claims and

11  does not have to be served under Rule 5A2 that you can find

12  case law support for that in Yadgarov, which is an Eastern

13  District of New York case, 2014 U.S. District Lexus 368, as

14  well as a Southern District of New York case called Benevidez,

15  which is at 2013 U.S. District Lexus 76154.  If there are no

16  new claims then it does not have to be filed.  Or the other

17  time that the amended complaint would supersede the original

18  complaint is the time it is served and the service is required

19  if it contains new claims and thus Rule 5A2 kicks in requires

20  that an amended pleading even be served on non appearing

21  defendants if it contains new claims.  This is --

22          THE COURT:  Can I stop you for a second?  Non

23  appearing defendant because you've just told me that you're

24  going to file an appearance.  So, if the procedure here is that

25  the parties file an amended complaint, why can't they just, you

1   just accept service?  Why isn't just filing an amended

2   complaint service on your client.

3        MR. LEDDICOTTE:  Thank you, your Honor.  Yes, I think

4   we actually get to both points.  Filing appearance would mean

5   that we are an appearing defendant and that means that the

6   amended complaint would be active at the time of filing and

7   would vitiate the original complaints at that time and be the

8   active complaint.

9        If for some reason we were not an appearing defendant,

10  which is not position we're taking.  We have said we will all

11  appear and we will appear.  Then even at that point Sudan is

12  willing consistent with the (inaudible) Service Rule to accept

13  service through the ECF filing mechanisms of the amended

14  complaint.  So, service is not an issue.  So, it would

15  simultaneously at either time now.

16       Appearing has always been our intention.  We are

17  appeared for O'Neil because that was a motion we were filing.

18  Days later the plaintiff's executive counsel reached out to us

19  and we were working with them to come up with a consolidated

20  method of handling this complaint.  So, the concept that they

21  have suggested that we are somehow trying not to appear

22  selectively in different cases in this MDL, that's not the

23  case.  Yes, there is an appearance in O'Neil because that was

24  the first motion filed.  We've engaged with them regarding what

25  should happen in the other sub-cases within this MDL and our

K85AAINRC                    Conference

1    intention is to litigate those.

2            So, under Vesco at the time of filing or service,

3    again, they're coterminous here because we are appearing and

4    we're willing to accept service through ECF of an amended

5    complaint if your Honor permits the plaintiffs to do that, that

6    is when that amended complaint goes active.  And several courts

7    have found as the Yadgarov decision says, citing several cases

8    both at page 21 in that decision and Footnote 12 from across

9    the federal courts, several courts have found that once the

10   original complaint is superseded the clerk's entry of default

11   on the prior pleading is muted.

12           So, filing amended complaint will mute the entry of

13   default.  Filing amended complaint, if your Honor permits it,

14   will mute the entries of default on the previous complaints,

15   the consolidated master complaint from 2003 in Ashton.  I

16   believe it is the first amended Federal Insurance complaint and

17   I believe it is the third amended Burnette complaint.

18           THE COURT:  Let me ask you a question.  Obviously,

19   I'll ask the same question of the plaintiff.  If it sounds like

20   service is no longer an issue thankfully and we can take that

21   off the table, why is it the best way to proceed the following?

22   I order you and you comply and file an appearance in every

23   case.  The plaintiffs file whatever amended consolidated

24   complaint we all agree they are going to file.  You can then

25   file your motion to dismiss those complaints.  And in

1    opposition to those motions to dismiss they can say no, no,

2    those motions are irrelevant because default has been entered

3    and the Court should proceed to a damages inquest?  I think

4    that's the most efficient way to proceed here.

5              MR. LEDDICOTTE:  If you will allow me just one moment,

6    your Honor?

7              (Pause)

8              MR. LEDDICOTTE:  So, yes, I think with one caveat, we

9    agree that that's an efficient way to proceed.  Our one caveat

10   is and I've mentioned that my colleague Ms. Kownacki will

11   address this, we oppose an amendment but should your Honor

12   allow an amendment and we believe that if you allow it it

13   should be a single consolidated complaint which Ms. Kownacki

14   can address but should your Honor allow an amendment, yes, we

15   agree that that's an efficient way to proceed.

16             THE COURT:  OK.  Thank you.

17             MR. LEDDICOTTE:  I was going to propose that

18   Ms. Kownacki could address whether or not an amendment is

19   appropriate and if an amendment be allowed that it be a single

20   consolidated complaint, not two or multiple.

21             THE COURT:  OK.  I was going turn to her now.

22             MS. KOWNACKI:  Thank you, your Honor.  This Nicole

23   Kownacki.

24             As my colleague said (inaudible) has no objection to

25   consolidation but Sudan objects to the plaintiff's request to

K85AAINRC                  Conference

1    amend the complaint for three reasons.  The plaintiffs are

2    using this amendment to bring stale claims.  They have never

3    explained their substantial delays in prosecuting these cases.

4    And their proposal for the amendment, we don't see as

5    streamlined efficient unless it is a single consolidated

6    amended complaint.

7         As to the plaintiff's point about purported new facts

8    that have come to light as recently as 2018, the O'Neil

9    supplemental complaint postdated that timeframe and yet the

10   O'Neil plaintiffs failed to include these new facts in their

11   supplemental complaint and they are now seeking to amend after

12   Sudan has already (inaudible) efforts to amend.

13        And then the remaining plaintiffs are apparently

14   seeking to bring claims to update the law but they're seeking

15   to bring their claims under 1605 A and B exceptions to

16   sovereign immunity but there are time limitations and

17   transition rules there that the plaintiffs are clearly trying

18   to circumvent with respect to the --

19        THE COURT:  If you are reading something it goes

20   quicker.  Please, slow down.

21        MS. KOWNACKI:  The transition rules that Congress

22   established when it enacted CPLR 3A, the plaintiffs were

23   applied to cases like plaintiff's cases so pending in 2008 when

24   plaintiffs brought their claim.  And Congress made clear that

25   any conversion to 1605A had to happen in those pending cases by

1   end of March 2008.  Plaintiffs here have failed to convert

2   their cases on time and now the time for bringing new CPL5A

3   action just like and AGA action has capped.

4           Sudan particularly as a foreign sovereign is entitled

5   to some certainty over what claims could be brought and it

6   should not be (inaudible) plaintiffs who have been waiting

7   silently in the wings with dormant cases for over a decade now

8   trying to use an amendment process to bring sealed claims to

9   circumvent the transition rules.  This amounts to an

10  unnecessarily protracted litigation.

11          THE COURT:  I am sure the plaintiff will say this if I

12  gave him the opportunity but it does feel like a little bit of

13  hubris for Sudan to complain that the plaintiff has been

14  delaying actions when these claims have been pending against

15  your client for more than a dozen years.

16          MS. ERB:  I appreciate that Sudan has not appeared in

17  these actions for many years but we reject plaintiff's counsels

18  accusations of an intentional delay.  It is very much in the

19  public record in the years since plaintiff filed these

20  complaints Sudan has faced catastrophic civil war and natural

21  disasters, followed by civil unrest that led to a total regime

22  change in just 2019.  And Sudan's new transitional government

23  has been in place only approximately a year.  And in the

24  interim Sudan has vastly improved its relationship with the

25  United States and is actively litigating these cases pending

K85AAINRC                    Conference

 1    against it throughout the United States.

 2            Sudan's lack of appearance does not excuse plaintiffs'

 3    failure to prosecute their claims, particularly, in the last

 4    five years where Sudan has been actively litigating cases

 5    throughout the country including before the Supreme Court.

 6    Plaintiff has not offered any explanation for their own delay

 7    and leaving these cases dormant including while they pursue

 8    cases against Saudi Arabia and default judgments against Iran

 9    in this case.

10            Plaintiffs otherwise active pursuant of cases

11    especially in this MDL and counsel's knowledge of the law and

12    the fact that Sudan was actively litigating in other cases and

13    their awareness of the transition rules, there's no reason why

14    plaintiffs should not be amending their complaint particularly

15    to add stale claims.

16            My other point about the consolidation and the lack of

17    efficiency of plaintiffs' proposed approach, plaintiffs

18    proposed to file two separate amended complaints but this

19    doesn't streamline the proceeding as they suggest.  If Sudan

20    has to respond to multi complaints, it can do so with the

21    complaints that plaintiffs have already filed.

22            But if the Court is going to grant plaintiff's belated

23    amendment, Sudan would request that the Court only permit a

24    single consolidated amended complaint as the Court has

25    discretion to do because plaintiff are at times otherwise and

K85AAINRC                     Conference

1   they have no right to bring an amended complaint since they've

2   already used their (inaudible) right.

3           THE COURT:  Thank you.

4           All right.  Me turn to the plaintiff.  Maybe I'll just

5   I'll begin with my proposal for a going forward process here

6   and ask somebody from the plaintiffs to respond.  What I'm

7   proposing is that the counsel for Sudan file an appearance in

8   each of the cases, that the plaintiffs file an amended

9   complaint and I'll put an as asterisk on that and if you could

10  address the issue that was last raised about one or more

11  complaints, that the defendant then file a motion to dismiss

12  the amended complaint, that the plaintiff could then both

13  oppose that motion and simultaneously argue if that is their

14  intention, that the defaults that have been entered by the

15  Court should remain and that the Court should simply deny the

16  motion to dismiss and set an evidentiary hearing as 1608

17  requires for default damages.  So, we could address all of it

18  in full motion practice.  That seems me right not the most

19  efficient way to proceed.

20          And I think from what I've heard from the defendants

21  they agree with that proposal with the caveat about the

22  amendments that obviously they have proposed the amendment on

23  the main.  But if we were to allow it, that be would an

24  acceptable proposal.  So, let me hear from the plaintiffs their

25  reaction to that proposal

1           MR. CARTER:  Sean Carter.  Sorry Mr. Maloney and I are

2    stepping over one another.

3           In general, your Honor, at least from our perspective,

4    the process your Honor described, it seems generally workable.

5    I think the one concern would be that in consenting that some

6    processes in which Sudan were permitted to file a motion

7    without there having been an application seeking formal relief

8    for default, we may be inadvertently waiving the protections of

9    the default.  And as you probably heard, Sudan has a bit of a

10   history of raising highly technical arguments after ignoring

11   proceedings for quite some time and many of the arguments you

12   just heard from counsel about civil unrest and the like have

13   been presented to other courts which have not found them

14   credible.  There's informative discussion about this in the

15   Flanagan decision which is 190 F.Supp F.3d at 138.  And so

16   we're mindful of that and we're mindful of proceeding in a way

17   that's quite technical.

18          So, what I would proceed, your Honor, is that Sudan be

19   required to in its motion and a motion it's filing address not

20   only the basis for its motion to dismiss but its arguments for

21   claiming that the defaults do not remain in place and to

22   address why defaults should be lifted if they are still in

23   place in that initial filing so we can respond so that.

24          We would also as a result of that get the benefit of

25   Sudan addressing issues that we think are quite critical about

K85AAINRC                    Conference

1   the willfulness of its failure to appeal and about potential

2   prejudice.  And the one thing that we don't want to have happen

3   here is for Sudan to appear for purposes solely of making a

4   technical argument even though it knows that it does not have

5   an intention to participate in discovery should the Court deem

6   that to be the appropriate course and as part of the proffer

7   with regard to why the default shouldn't remain in place that

8   would necessarily require Sudan to confirm that evidence is

9   still available and the witnesses would be made available.

10          So, your Honor, I think it's the same process, just

11  with Sudan also addressing the default issue in whatever motion

12  it filed.

13          THE COURT:  Understood.

14          OK.  Thank you.

15          MR. MALONEY:  Your Honor, just to add to that, I'm

16  glad Mr. Carter covered the points I was going to make.  The

17  only one that I wanted to add was Sudan has, its current

18  posture right now is we can move to dismiss all the complaints

19  out there, five after six complaints, and yet, if there is an

20  amended complaint -- that is two too many, I am not sure I

21  follow the logic of that.  They can respond to a single motion

22  to five complaints, they can certainly do the two.  The Ashton

23  plaintiffs would like to file their own complaint.  We would

24  continue to work collectively as the (inaudible) for over 16

25  years and we would have a joint response as we've always done.

K85AAINRC                  Conference

1      THE COURT:  The motion itself would be a joint

2  response, the opposition you're saying.

3      MR. MALONEY:  The opposition.  I assume they'd have a

4  joint motion and we'd have a joint opposition.

5      THE COURT:  Right.  Well, obviously the Sudan wasn't

6  in the case at the time but this issue was actively litigated

7  before the consolidated amended complaints were filed against

8  the Kingdom of Saudi Arabia.  And I recall relatively vividly

9  the colloquy between me and Mr. Kreindler about why his client

10  should have a opportunity to file their own complaint whereas,

11  everybody else was joining in all the amended complaints.  We

12  had a lengthy colloquy as I recall.  And ultimately I allowed

13  it after a fair amount of thought but ultimately allowed it.

14  So, I think given the fact that I have spent a significant

15  amount of time addressing that particular issue and I've now

16  seen it borne out in the case against the kingdom, I am

17  satisfied that it's probably the right thing to do for the same

18  reasons I allowed it respective to the claims against the

19  kingdom and it has not proven to be overly burdensome as far as

20  I can tell in managing the litigation into discovery.

21      So, my inclination is to allow the two complaints, the

22  Ashton complaint and then the other consolidated amended

23  complaint.  I'll give an opportunity to Mr. Flemming to speak

24  but my understanding is that it was his intention to simply

25  join the allegations filed in the Ashton complaint so that it

K85AAINRC                    Conference

1    would be, they would be adopted in the short form complaint.

2            Mr. Flemming, is that your intention?

3            MR. FLEMMING:  Yes, your Honor, that is correct.  The

4    Maher plans came from the Ashton case or cases that were

5    consolidated were associated with Ashton and so we thought it

6    does make sense given all the other issues with regard to how

7    the complaints should be presented.  So, we haven't seen what

8    the Kreindler firm intends to do as far as the amended

9    complaint.  But we at this point our object is to just make

10   their sure that these clients are represented and we're happy

11   to and tend to do what Mr. Maloney suggested earlier which was

12   correct which is to follow along in Ashton and adopt the

13   complaint.  We obviously took a short form complaint from the

14   Court's approach in the Saudi cases.  If that's satisfactory,

15   that would be fine and we would be joining in the amended

16   complaint.  We're adopting it as well.  If Court wants us to do

17   something a little different we certainly would.  We thought

18   that made the most sense in this context to use the construct

19   that the Court had made, had designed in the Saudi cases but

20   yes, so that is correct, your Honor.

21           THE COURT:  OK.  Well, I do think that the procedures

22   that have been set forth in the claims against Saudi Arabia and

23   against Iran are limited to those defendants and so any short

24   form procedure that we would adopt, I think would require an

25   additional order of the Court so that any other parties that

K85AAINRC                     Conference

1    join in either to the Ashton complaint or what I think is more

2    likely the consolidated amended complaint, have a simple

3    procedure for joining those claims.

4              MS. KOWNACKI:  Your Honor, if I may just quickly

5    address --

6              THE COURT:  Yes.

7              MS. KOWNACKI:  To the point about the two complaints

8    that proceeded against the kingdom, I just want to point out

9    the decision there was all the complains were being filed prior

10   to the statute of limitations expiring on those claims and that

11   is not the case here.  So, the only option for plaintiffs for

12   bringing their 1605A 1605B claims without, we object on

13   timeliness grounds.  But their only option is in those amended

14   complaints and they cannot file a new complaint.  The

15   distinction here is that these are, a single complaint could be

16   a streamlined procedure to move forward and there isn't an

17   opportunity for additional plaintiffs to separately file a

18   complaint by right.

19             THE COURT:  Understood.

20             MR. HAEFELE:  First, that seems to me that that would

21   be the argument that Sudan would be permitted to make in their

22   motion to dismiss as opposed to before there was any filings

23   because until the kingdom or until Sudan were to appear in the

24   case and raise the objection or raise the defense, the defense

25   isn't actually raised.  And there may be other reasons and the

K85AAINRC                    Conference

1    plaintiff's position is that there are other reasons why the

2    statute of limitations that the Sudan is arguing applies

3    doesn't apply and we would use that in defense. So, it seems

4    that it's putting the cart before the horse if you were to

5    apply it now.

6            THE COURT:  Understood.

7            On the issue of whether there should be one Ashton

8    complaint and one consolidated amended complaint again, I've

9    spent a significant amount of time thinking about this in

10   connection with the Saudi Arabia claims. I appreciate the

11   arguments that defense counsel made as why this posture is

12   different than that posture but I think the reasons why I

13   allowed it in the first place remain same. And again, I have

14   been living with the claims against Saudi Arabia and in my

15   experience it has not been unduly burdensome for defendants to

16   manage two separate complaints. So, I am going to authorize

17   two complaints albeit, consolidated amended complaints. There

18   will be the Ashton complaint. And the parties should propose

19   procedures for other parties to join in a short form complaint.

20   Those complaints as we've done in the claims against -- Saudi

21   Arabia and the Iran. So, those will the two complaints. I am

22   going to authorize the filing of the amended complaints and

23   direct that the defendants file a consolidated motion to

24   dismiss those complaints. It'll be one motion to dismiss both

25   complaints and the motion should also address the issue of

K85AAINRC                    Conference

1    whether or not the amended complaint by their filing vitiates

2    the defaults that have been entered in the complaint, in the

3    cases and any arguments that the Sudan has as to those

4    defaults.  Then there'll be a single consolidated opposition to

5    the motion to dismiss and if an appropriate opposition to the

6    issue of whether the default remain valid and whether or not

7    the Court should not just move to the next phase under the

8    default protocol of the statutes or whether or not the defaults

9    have in fact been vitiated by the filing of the amended

10   complaint and then there'll be a reply brief filed by the

11   Sudan.

12           I'm also going to direct that by next Friday,

13   August 14, that counsel for the defendants file a notice of

14   appearance in all of the relevant cases and that then will

15   handle the issue of service so the amended complaints will be

16   served on counsel.

17           What I would like to do is to give the parties an

18   opportunity to meet and confer on dates and get back to me on a

19   proposal for dates.  So, we need dates after filing of the

20   amended complaint and then a briefing schedule on the motions.

21   In addition, we need a proposed order which I think can mirror

22   the orders that exist in the other cases for the other

23   defendants for the short form complaint process.  So, I'll also

24   direct that the parties meet and confer on that issue and

25   submit something to me for my consideration.

K85AAINRC                    Conference

1          All right.  I think that addresses all of the issues

2     on today's agenda.  Let me ask the plaintiffs whether there are

3     any other applications?

4               MR. CARTER:  Nothing from me.

5               MR. MALONEY:  Nothing from Ashton, your Honor.

6               MR. HAEFELE:  Nothing from me either.

7               MS. FLOWERS:  Your Honor, this is Joan E. Flowers.  I

8     have to say one thing for the record.

9          There were a lot of statements made about delay and

10    dormancy and how the claims against the Sudan were stale.  I

11    have to put on the record that Sudan has been a defendant since

12    August 15 in 2002 when we named them in the original Burnette

13    complaint and ever since.  So, we dispute those

14    characterizations.

15              THE COURT:  Thank you.

16         Any further applications from the defendant?

17              MR. LEDDICOTTE:  We understand the procedure you've

18    outlined.  I just want to be clear that in this discussion and

19    understanding that procedure that one, we will file our

20    appearances today.  And two, Sudan in doing this is preserving

21    all of the objections that may be and defenses and immunities

22    that may be available to it if to be raised in motion to

23    dismiss that you outlined including timeliness.

24         I think differing from the procedure against the

25    Kingdom of Saudi Arabia that was within the clear statute of

K85AAINRC                    Conference

1    limitations for those these events, we are now beyond that

2    statute of limitations.  So that I just want to be clear that

3    we are preserving our objections on that front should we need

4    to make them in the motion to dismiss once we see the Ashton

5    complaint and the consolidated amended complaint.

6         And I do think it's important, I've heard what

7    Ms. Flowers has said.  We do take objection to having, when the

8    government come along and served with a 2018 O'Neil complaint

9    and timely filed our motion to dismiss and the process we've

10   engaged in since early February with the plaintiffs that

11   somehow that Sudan as a litigating party having appeared in

12   O'Neil and participated and going towards all of the actions

13   once we were engaged with the plaintiffs starting in February

14   has been interposed and delay as we've worked with plaintiffs

15   and now with your Honor and the Court to come up with this

16   consolidated procedure.

17        THE COURT:  Understood.

18        OK.  I think that addresses everything.  So, I will

19   lookout for the defendants' notices of appears.  And if the

20   parties can get back to me in no later than two weeks from now

21   I think that should be adequate time to submit a promote postal

22   or briefing schedule and the filing of the amended complaints.

23        Great.  With that, I believe we are adjourned.

24        Thank you everybody.  Be safe.

25        (Adjourned)